**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Jeffrey and Monica D., individually and on behalf of B.D., | : | |
| Plaintiffs, | : | |
| v. | : | Civil Action No. |
| Downingtown Area School District, | : | |
| Defendant. | : | |

## COMPLAINT

### PRELIMINARY STATEMENT

1. This action is brought under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*; Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794 *et seq.*; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*; and 42 U.S.C. § 1983 (Section 1983).

2. Plaintiffs Jeffrey and Monica D. (Parents), individually and on behalf of their child, B.D., filed a special education due process complaint against the Downingtown Area School District on June 17, 2025 and amended it on August 8, 2025 and October 6, 2025.

3. Parents filed the complaint because the District failed to provide B.D., a child with disabilities who has significant socio-emotional and academic needs, a free appropriate public education (FAPE) and otherwise discriminated against B.D.

4. Parents sought, among other relief, reimbursement for an independent educational evaluation (IEE) and compensatory education.

5. On June 23, 2026, a Pennsylvania Special Education Hearing Officer issued a decision, attached as Exhibit A, concluding that the District denied B.D. FAPE and awarding him

550 hours of compensatory education. The decision also denied Parents' IEE claim and ignored several of their FAPE claims.

6. The District has not complied with the Hearing Officer's order. It has refused to fund compensatory-education services that Parents obtained for B.D.

7. Parents bring this action to challenge part of the Hearing Officer's decision, enforce B.D.'s compensatory-education award, and recover their attorney's fees and costs.

**JURISDICTION**

8. Jurisdiction is based on 28 U.S.C. §§ 1331, 1343, and 1367 and the IDEA, the ADA, Section 504, and Section 1983.

9. Venue in this district is proper under 28 U.S.C. § 1391(b).

10. Parents have fully exhausted their administrative remedies.

**PARTIES**

11. Jeffrey D. and Monica D. are B.D.'s parents.

12. B.D. is a "child with a disability" within the meaning of the IDEA. 20 U.S.C. § 1402(3)(A).

13. B.D. has autism, speech impairments, anxiety, depression, learning disorders, and Post-Traumatic Stress Disorder (PTSD).

14. As a result of those disabilities, B.D. is eligible for special education services under the IDEA.

15. B.D. is an "individual with a disability" within the meaning of Section 504 and the ADA.

16. B.D. is otherwise qualified to participate in school activities within the meaning of Section 504 and the ADA.

17. The District is a local educational agency (LEA) within the meaning of the IDEA.

18. At all relevant times, the District was the agency responsible for providing B.D. special-education and related services to ensure that he receives FAPE under the IDEA.

19. The District must comply with the IDEA's requirements.

20. The District receives federal funding.

21. The District must comply with the requirements of Section 504.

22. The District must comply with the requirements of the ADA.

23. The District is a "program or activity" receiving federal financial assistance under Section 504.

24. The District is a "public entity" under the ADA.

**STATUTORY AND REGULATORY BACKGROUND**

25. Congress passed the IDEA so that "children with disabilities . . . have access to a free appropriate public education." 20 U.S.C. § 1400(c)(3).

26. To afford a child FAPE, an LEA must evaluate her and provide her an Individualized Education Program (IEP). 20 U.S.C. § 1412(a)(4).

27. When evaluating a child, LEAs must "[u]se a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information about the child," so that they can develop an appropriate IEP for her. 34 C.F.R. § 300.304(b)(1). The evaluation must be "sufficiently comprehensive to identify all of the child's special education and related services needs." *Id.* § 300.304(c)(6).

28. IEPs must be ambitious and reasonably calculated to provide the child meaningful educational progress. *See Endrew F. v. Douglas Cnty. Sch. Dist.*, 580 U.S. 386, 388 (2017); *T.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000).

29. If an LEA denies a child FAPE, her parents can file a due process complaint against the LEA. 20 U.S.C. § 1415(b)(7).

30. Section 504 and the ADA require LEAs to provide children with disabilities FAPE. *See Andrew M. v. Del. Cnty. Off. of Mental Health & Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007) ("[W]hen a state fails to provide a disabled child with a free and appropriate education, it violates the IDEA" and "it also violates [Section 504] because it is denying a disabled child a guaranteed education merely because of the child's disability."); *Indiana Area Sch. Dist. v. H.H.*, 428 F. Supp. 2d 361, 363 n.3 (W.D. Pa. 2006) ("[T]he Third Circuit generally has held that the same analysis under § 504 applies in determining whether a defendant's actions violate the ADA[.]").

31. Section 504 and the ADA also bar covered entities from excluding, denying benefits to, or otherwise discriminating against qualified individuals with disabilities. 29 U.S.C. § 794(a); 28 C.F.R. § 35.130.

32. A covered entity engages in discrimination under the ADA and Section 504 if it fails to provide a student reasonable accommodations or supplemental services, or it denies the student "*equal opportunity* to participate in, and enjoy the benefits of, a service, program, or activity." 28 C.F.R. § 35.160(b)(1) (emphasis added).

33. The ADA extends the nondiscrimination rules of Section 504 to public entities even if they do not receive federal funds. 42 U.S.C. § 12132.

34. Title II of the ADA specifically requires public schools to provide reasonable accommodations to students with disabilities. 28 C.F.R. § 35.130(b)(7)(i).

35. When a parent establishes that an LEA failed to appropriately evaluate her child, the parent is entitled to an independent educational evaluation (IEE) at public expense. 34 C.F.R. § 300.502(b). The LEA must consider the IEE when developing programming for the child. *Id.* § 300.502(c)(1).

36. When an LEA denies a student FAPE or otherwise discriminates against her, her

parents may be entitled to various remedies under the IDEA, Section 504, and the ADA—including compensatory education. *See Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 249 (3d Cir. 1999).

37. Compensatory education is funding that a student can use for private tutoring, counseling, and other services that help close educational gaps arising from IDEA, Section 504, and ADA violations.

38. The default method for determining the amount of compensatory education to which a child is entitled is "the 'hour for hour' method, under which [the] court may award one hour of compensatory education for each hour [that] FAPE was denied." *Montgomery Cnty. Intermediate Unit No. 23 v. C.M.*, 2017 U.S. Dist. LEXIS 168709, *23–24 (E.D. Pa. Oct. 12, 2017).

39. In Pennsylvania, hearing officers typically use the hour-for-hour method and award a child who was denied FAPE a certain number of compensatory-education hours, which the child's parents can decide how to use. *See Connor J. v. Kennett Consol. Sch. Dist.*, 2023 U.S. Dist. LEXIS 16624, *34 (E.D. Pa. Feb. 1, 2023) (observing that "parents control the implementation of a compensatory education award"). If, for instance, a child was awarded 100 compensatory-education hours, her parent could decide to use the hours to fund 20 hours of private counseling, 20 hours of a social-skills camp, and 60 hours of math and reading tutoring.

40. Parents who prevail in a due process hearing are entitled to their reasonable attorney's fees and costs under the IDEA, Section 504, and the ADA.

41. Under Section 504 and the ADA, expert-witness costs are recoverable costs. *See M.W. v. Sch. Dist. of Phila.*, 2016 U.S. Dist. LEXIS 96067, *22 (E.D. Pa. July 22, 2016).

42. Parents can challenge a hearing officer decision in this Court. *See, e.g.*, 20 U.S.C. § 1415(i)(2).

43. Parents can also enforce a hearing officer decision in this Court. *See D.E. v. Cent.*

*Dauphin Sch. Dist.*, 765 F.3d 260, 278 (3d Cir. 2014) (parents can enforce hearing officer decisions under the IDEA); *Jeremy H. v. Mount Leb. Sch. Dist.*, 95 F.3d 272, 279 (3d Cir. 1996) (parents can also enforce hearing officer decisions under Section 1983).

**STATEMENT OF FACTS**

44. B.D. is 15 years old.

45. B.D. has autism, speech impairments, anxiety, depression, learning disorders, and PTSD.

46. B.D.'s primary disability under the IDEA is Emotional Disturbance.

47. B.D. has for years struggled with math, reading, and science and with peer relationships, anxiety, and self-regulation.

48. B.D. attended Downingtown Area Middle School in seventh and eighth grade, and he attended Downingtown Area High School West in ninth grade.

49. The District denied B.D. FAPE and otherwise discriminated against him all three years.

**The District ignores B.D.'s significant socio-emotional and academic needs and denies him FAPE in seventh, eighth, and ninth grade.**

50. In seventh grade (the 2023-2024 school year), B.D.'s mental health and grades continued an ongoing decline, of which the District had been aware since at least sixth grade.

51. Peers consistently bullied B.D. He constantly ruminated on peer interactions, including during his private-therapy sessions.

52. Though B.D. studied hard, he received Cs and Ds in math and science. His poor grades spiked his anxiety.

53. B.D.'s IEP services were inadequate to meet his math needs. He did not make progress on his IEP goals in math computation and concepts.

54. B.D. also had significant reading-comprehension deficits, which contributed to his academic struggles. As a seventh grader, B.D. was reading at a fourth-grade level.

55. B.D.'s IEP services were inadequate to meet his reading-comprehension needs. He did not make progress on his IEP goal in reading comprehension.

56. The District ignored B.D.'s struggles in seventh grade; it did not make any meaningful changes to his IEP to address his spiraling academic and socio-emotional needs.

57. Still, B.D. entered eighth grade (the 2024-2025 school year) optimistic, hopeful that he would make friends and earn better grades.

58. But just a month into eighth grade, in October 2024, Parents noticed that B.D. was more withdrawn, and they asked the District's prevention specialist to arrange for the District to provide B.D. more psychological and emotional support.

59. The District, however, did not offer B.D. more support.

60. Soon thereafter, Parents learned that B.D.'s peers were spreading a rumor that B.D. was a school shooter.

61. Peers were also constantly harassing B.D. at school, calling him "psychopath," "retard," "faggot," "dirty Mexican," and "emo fag," among other epithets.

62. The bullying traumatized B.D. He started cutting himself, he engaged in suicidal ideation, and his therapist diagnosed him with PTSD.

63. Parents reported to the District that B.D. had PTSD and that he was having suicidal thoughts.

64. Parents signed releases allowing the District to communicate with B.D.'s private therapist, but the District never contacted the therapist.

65. B.D.'s IEP did not address his evolving needs. Parents accordingly requested that the District reevaluate B.D.

66. The District agreed to reevaluate B.D. in late 2024, but it did not perform any new testing or formal observations. Instead, it simply conducted a review of B.D.'s records.

67. That 2024 reevaluation was inappropriate because it was not "sufficiently comprehensive to identify all of [B.D.]'s special education and related services needs." 34 C.F.R. § 300.304(c)(6).

68. Because the reevaluation was inappropriate, and because Parents were desperate to identify what supports B.D. needed, they paid for an independent educational evaluation (IEE). A privately retained school psychologist and a speech-and-language therapist conducted the IEE.

69. The District also failed to revise B.D.'s IEP to address his evolving socio-emotional needs and his ongoing academic struggles.

70. As in seventh grade, in eighth grade, B.D. did not make progress on his math and reading IEP goals. But the District neither revised his goals nor provided him additional math and reading support.

71. Without the special education supports he needed, B.D. had behavioral incidents at the end of eighth grade that prompted the District to conduct a suicide screener.

72. In August 2025, before ninth grade started, Parents informed the District that they intended to place B.D. in a private school at public expense unless the District started providing him FAPE.

73. Parents ultimately gave the District another chance. They opted to keep B.D. in the District for the start of ninth grade.

74. B.D. entered ninth grade in crisis and multiple grade levels behind in reading and math.

75. The District again denied B.D. FAPE and failed to address his unique needs.

76. In ninth grade, peers continued to bully B.D. at school, and the District provided B.D. no interventions for his PTSD and continued to neglect his academic needs.

77. B.D. needed a safety plan to address the peer bullying he endured. But the District refused to provide one.

78. In September and October of ninth grade, B.D. reported to school staff that he was being bullied, but the District took no action.

79. B.D. needed more social and emotional support to address his anxiety and depression. But the District did not provide it.

80. B.D. needed slower-paced instruction in a classroom with a small teacher-to-student ratio and constant interaction between the teacher and students, yet the District placed him in large, lecture-style classes with fast-paced instruction.

81. B.D. needed pre-teaching and re-teaching of academic lessons and opportunities to check-in with a trusted adult, but the District did not provide him those interventions.

82. In December 2025, Parents emailed the District, pleading for it to provide B.D. more supports.

83. But the District refused to provide B.D. the support he needed.

84. Parents therefore removed B.D. from the District in January 2026 and placed him in a private school that specializes in educating children with disabilities.

85. The private school has addressed B.D.'s unique needs, and B.D. is making significant progress.

**Parents file for due process, and the Hearing Officer agrees that the District denied B.D. FAPE.**

86. In June 2025, Parents requested a due process hearing, and they later amended their complaint in August and October 2025 to address the District's failures in ninth grade.

87. Parents alleged that the District violated B.D.'s rights under the IDEA, Section 504, and the ADA.

88. They asserted that the District's 2024 reevaluation was inappropriate and that the District denied B.D. FAPE and otherwise discriminated against him in seventh, eighth, and ninth grade.

89. Parents requested compensatory education for seventh grade, eighth grade, and through December 2025 of ninth grade; funding for an IEE; and reimbursement for B.D.'s private school tuition.

90. The Hearing Officer, however, severed Parents' claims. He ordered a separate due process matter for Parents' tuition-reimbursement claim. That matter is pending before a different hearing officer.

91. The parties then proceeded to hearing on Parents' compensatory-education and IEE claims.

92. Parents presented the testimony of, among other witnesses, the school psychologist and speech-and-language therapist who evaluated B.D. after the District failed to properly evaluate him in 2024.

93. Parents tried to offer the testimony of Monica D. (B.D.'s mother) because she was heavily involved with B.D.'s education in ninth grade, but the Hearing Officer did not allow her to testify. That was a legal error that prejudiced Parents, preventing them from offering important evidence about the District's failure to provide B.D. FAPE in ninth grade.

94. The Hearing Officer also erroneously limited the testimony of several other witnesses offered by Parents, which further prejudiced Parents.

95. After several days of hearing, the Hearing Officer found that the District denied B.D. FAPE under the IDEA and Section 504 by failing to adequately address his

"social/emotional/behavioral," "mathematics," and "reading" needs, and the Hearing Officer awarded B.D. 550 hours of compensatory education. *See* Ex. A, H.O. Dec'n at 29–34, 41.

96. The Hearing Officer found that the District denied B.D. FAPE in seventh, eighth, and ninth grade, but he significantly limited Parents' ninth-grade claims, refusing to consider all but one of the claims.

97. The Hearing Officer determined that the District denied B.D. FAPE in ninth grade by neglecting his reading-comprehension needs, but the Hearing Officer refused to consider Parents' claims that the District's math, reading, and socio-emotional programming was inappropriate from September 2025 through December 2025.

98. The Hearing Officer "declined to make findings of fact about [B.D.]'s mathematics programming in" ninth grade because, in his view, the "record present[ed] an incomplete picture of that year." Ex. A, H.O. Dec. at 31. Yet the Hearing Officer prevented Parents from presenting more evidence about ninth grade by excluding Monica D.'s testimony and limiting other testimony.

99. The Hearing Officer "declined to make findings of fact about [B.D.]'s programming in reading in" ninth grade "because the changes that would be implemented through [B.D.]'s December 2025 IEP were the basis for" Parents' decision "to pursue a private placement." Ex. A, H.O. Dec. at 32. But Parents alleged that the District's reading programming was inappropriate during the months *before* the District issued the December 2025 IEP (from September 2025 to December 2025).

100. The Hearing Officer did not explain why he ignored Parents' claim that the District failed to address B.D.'s socio-emotional needs in ninth grade.

101. The Hearing Officer committed legal error by failing to consider all Parents' ninth-grade FAPE claims.

102. As for Parents' IEE claim, the Hearing Officer found that the District's 2024 reevaluation was "inappropriate" because the District "neglected" B.D.'s evolving socio-emotional needs and failed to "update [his] academic achievement testing." Ex. A, H.O. Dec'n at 27–28.

103. "Once the Hearing Officer determined that the reevaluation was inappropriate, [B.D.] was entitled to an independent educational evaluation at public expense as a matter of law." *M.Z. v. Bethlehem Area Sch. Dist.*, 521 Fed. App'x 74, 77 (3d Cir. 2013).

104. Yet the Hearing Officer denied Parents' IEE claim because he believed that Parents' IEE "did not add to the educational understandings of [B.D.] from a programming perspective." Ex. A, H.O. Dec'n at 24, 35.

105. That was legal error: Parents are entitled to an IEE as a matter of law given the Hearing Officer's finding that the District's 2024 reevaluation was inappropriate.

106. It is irrelevant whether the Hearing Officer believed that Parents' IEE "add[ed] to the educational understandings of" B.D., but in any event, the Hearing Officer was wrong in concluding that. The IEE provided useful information about B.D.'s needs.

107. Even if the Hearing Officer did not err in denying Parents reimbursement for the IEE that they already obtained, he still erred by not ordering the District to fund an IEE. Under the IDEA, Parents are entitled to an IEE funded by the District—whether it is funding for the IEE that they already obtained or funding for a new IEE.

108. The Hearing Officer not only erroneously denied Parents' IEE claim but also exceeded the scope of his authority by opining on Parents' entitlement to recover prevailing-party costs.

109. The Hearing Officer stated that "reimbursement" for the costs of Parents' expert witnesses at hearing—which included the school psychologist, the speech-and-language therapist, and a special-education expert—would "not be ordered." Ex. A, H.O. Dec'n at 35.

110. That was legal error because hearing officers lack jurisdiction to decide a parent's entitlement to attorney's fees and costs. Only "district courts of the United States" have jurisdiction to decide "attorneys' fees and "costs." *See* 20 U.S.C. § 1415(i)(3).

111. Finally, the Hearing Officer addressed only Parents' claims under the IDEA and Section 504, failing to consider their ADA claims.

112. The Hearing Officer should have held that the District violated B.D.'s rights under both the ADA and Section 504 to the same extent that it violated his rights under the IDEA.

**The District fails to comply with the Hearing Officer's order.**

113. Under the Hearing Officer's order, B.D. is entitled to 550 hours of compensatory education.

114. The Hearing Officer imposed no limits on B.D.'s use of the compensatory-education hours; Parents can therefore choose the educational services and providers when using the hours.

115. After the Hearing Officer issued his decision, Parents attempted to use two of the hours: One for a private speech-and-language therapy session and one for a private counseling session. *See* Ex. B, Parents' Request.

116. The District, however, refused to fund those services. *See* Ex. C, District's Refusal.

117. The District told Parents that it will only fund services provided by District staff. *Contra Keystone Cent. Sch. Dist. v. E.E.*, 438 F. Supp. 2d 519, 526 (M.D. Pa. 2006) ("[I]t is illogical to force E.E. to receive compensatory education through the District, which is the entity that failed to provide him with FAPE in the first place.").

118. The District also told Parents that it will fund only a few discrete types of services.

119. The District violated the Hearing Officer's order by refusing to fund the two hours of compensatory education that they paid for on B.D.'s behalf pursuant to the Hearing Officer's order.

120. The District violated the Hearing Officer's order by adding conditions to B.D.'s compensatory-education award that the Hearing Officer did not impose.

121. The District is violating the Hearing Officer's order by refusing to provide B.D. access to his compensatory-education award.

122. The District's failure to comply with the Hearing Officer's order is irreparably harming Parents and B.D.

123. The District's failure to comply with the Hearing Officer's order is impeding B.D. from accessing compensatory-education services that he needs.

124. Parents cannot afford to continue funding private counseling and the other compensatory-education services that B.D. needs.

## CAUSES OF ACTION

### COUNT I: THE IDEA, SECTION 504, AND THE ADA IEE REIMBURSEMENT

125. Parents incorporate the above paragraphs as though fully set forth herein at length.

126. The Hearing Officer erred in denying Parents reimbursement for their IEE.

127. Parents are entitled to reimbursement for the IEE because the District's 2024 reevaluation was inappropriate.

128. Parents request an order awarding reimbursement for the IEE they obtained for B.D.

129. In the alternative, Parents request an order requiring the District to fund a new IEE.

## COUNT II: THE IDEA, SECTION 504, AND THE ADA COMPENSATORY EDUCATION FOR THE 2025-2026 SCHOOL YEAR

130. Parents incorporate the above paragraphs as though fully set forth herein.

131. The Hearing Officer erred in failing to consider Parents' claim that the District's math programming in ninth grade denied B.D. FAPE.

132. The Hearing Officer erred in failing to consider Parents' claim that the District's reading programming in ninth grade denied B.D. FAPE.

133. The Hearing Officer erred in failing to consider Parents' claims that the District denied B.D. FAPE in ninth grade by failing to adequately address his socio-emotional needs and the bullying he was experiencing.

134. The District denied B.D. FAPE from September 2025 to December 2025 by failing to adequately address his math, reading and socio-emotional needs, and by failing to address the bullying he experienced.

135. B.D. is entitled to compensatory education to remedy the District's denial of FAPE from September 2025 to December 2025.

136. Parents request an order awarding B.D. compensatory education for September 2025 to December 2025.

## COUNT III: THE IDEA AND SECTION 1983 ENFORCEMENT OF THE HEARING OFFICER'S ORDER

137. Parents incorporate the above paragraphs as though fully set forth herein.

138. The Hearing Officer ordered the District to provide B.D. 550 hours of compensatory education.

139. The District has violated the Hearing Officer's order by refusing to fund compensatory-education services that they selected and paid for on B.D.'s behalf.

140. Parents have used the compensatory-education hours to obtain services, but the

District has refused to fund them.

141. The District has also violated the order by imposing onerous limitations on the compensatory-education award that the Hearing Officer did not impose.

142. The District is irreparably harming Parents and B.D. by violating the Hearing Officer's order.

143. Parents request an order enforcing the Hearing Officer's order and requiring the District to immediately fund the compensatory-education services that they obtained for B.D.

**COUNT IV: THE IDEA, SECTION 504, AND THE ADA**
**ATTORNEY'S FEES AND COSTS**

144. Parents incorporate the above paragraphs as though fully set forth herein.

145. Parents prevailed at the due process hearing under the IDEA and Section 504.

146. Because the Hearing Officer ruled that the District violated B.D.'s rights under the IDEA and Section 504, his decision establishes that the District also violated the ADA.

147. Parents obtained important and significant relief.

148. The Hearing Officer awarded Parents 550 hours of compensatory education.

149. As the prevailing party, Parents are entitled to reasonable attorney's fees and costs under 20 U.S.C. § 1415(i)(3)(B), 29 U.S.C. § 794(a), and 42 U.S.C. § 12205 for the due process hearing and this action.

150. To the extent that the Hearing Officer concluded otherwise, he lacked jurisdiction to do so, and his conclusion was error.

**WHEREFORE**, Parents respectfully request that this Court award some or all of the following relief: (1) declare that the District denied B.D. FAPE and/or otherwise discriminated against B.D.; (2) award Parents reimbursement for the IEE they already obtained for B.D., or alternatively, order the District to fund an IEE; (3) admit additional evidence about the 2025-2026

school year; (4) award Parents compensatory education for September 2025 to December 2025; (5) order the District to immediately comply with the Hearing Officer's order and fund the compensatory-education services that Parents obtained for B.D.; (6) award attorney's fees and costs; and (7) grant any and all other relief that this Court deems appropriate.

Dated: September 17, 2026

Respectfully submitted,

*<u>/s/ Kevin A. Golembiewski</u>*
DAVID J. BERNEY
Pa. Bar No. 67882
KEVIN A. GOLEMBIEWSKI
Pa. Bar No. 316921
Berney & Sang
8 Penn Center
1628 JFK Blvd.
Philadelphia, PA 19103
kag@berneylaw.com
(215) 564-1030

PRINCESS R. DIAZ-BIRCA
Pa. Bar No. 334414
MICHAEL RAFFAELE
Pa. Bar No. 91615
709 N. 2nd St.
Suite 400, #1003
Philadelphia, PA 19123

*Counsel for Plaintiffs*